| |
|---|
| **Rodriguez v Ferstenberg** |
| 2025 NY Slip Op 30117(U) |
| January 8, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 521549/2020 |
| Judge: Genine D. Edwards |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

> At Part 80 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, located at 360 Adams Street, Brooklyn, New York on the 8th day of January 2025.

P R E S E N T :

Hon. Genine D. Edwards, Justice

-------------------------------------------------------------------------x

DAVID RODRIGUEZ, as Administrator of the
Estate of Dorothy Rodriguez,

                                        Plaintiff,

                                                            Index No: 521549/2020

            - against -                                     Decision & Order

HENRY FERSTENBERG, M.D., and
THE BROOKLYN HOSPITAL CENTER,

                                        Defendants.
-------------------------------------------------------------------------x

The following e-filed paper(s) read herein:          NYSCEF Doc. No.
Notice of Motion, Affirmation in Support,
Memorandum of Law, and Exhibits ……………….……….….…55-72
Affirmation in Opposition and Exhibits……………………..… 75-87
Reply Memorandum………………………………………………....89

In this action to recover damages for negligence, medical malpractice, and lack of informed consent, Henry Ferstenberg, M.D. ("Dr. Ferstenberg") and The Brooklyn Hospital Center (BHC) (hereinafter collectively "defendants") moved for summary judgment. Plaintiff opposed the motion.

[* 1]

Defendants' expert, Gary Slater, M.D. ("Dr. Slater") opined that given Dorothy Rodriguez's ("the decedent") bowel obstruction and/or necrotic bowel symptoms did not worsen, Dr. Ferstenberg, a then part-time employee at BHC, acted within the standard of care by not performing exploratory surgery. Dr. Slater indicated that at BHC, a teaching hospital, either the attending surgeon will assess patients during morning rounds or a resident will conduct the rounds and provide updates to the attending surgeon. Dr. Ferstenberg only made contact with the decedent between October 23 and October 26, 2018, and testified that he discussed her discharge on the morning of October 26, 2018, with chief resident Philip Kramer, M.D. The plan was to discharge the decedent on Monday or Tuesday, (October 29th or 30th) once her labs were repeated, if she was able to tolerate full fluids. It was Dr. Ferstenberg's practice not to discharge patients over the weekend.

Dr. Ferstenberg further testified that he neither approved nor ordered the decedent's discharge on October 27, 2018, and did not speak with any residents about her new complaints of pain, distention, and firmness of her abdomen, which was followed by an episode of vomiting. Nurse Gabriela Paulino Polanco's note, written on October 27, 2018, indicated that first year resident Daniel Azof, M.D. ("Dr. Azof") was informed of decedent's complaints and status, and he was awaiting new orders. Dr. Azof discharged the decedent on October 27, 2018, and noted that Dr. Ferstenberg was faxed/copied on the discharge note. Dr. Ferstenberg testified that while he was never faxed or emailed any discharge note, he is responsible for determining that a patient is in stable condition before being discharged. Dr. Azof testified that he did not have any direct conversations with Dr. Ferstenberg prior to discharging the decedent, but he had indirect contact through the senior residents. He further testified that it was customary practice for him to "go up the chain of command" and confer with the more senior residents, including second

[* 2]

year resident Rose Gooding, M.D. ("Dr. Gooding"), however he could not recall if she spoke with Dr. Ferstenberg regarding the decedent's October 27th status. Dr. Gooding testified that while she was not assigned to the decedent, the Whatsapp conversation between herself and Dr. Azof indicated that she contacted Dr. Ferstenberg regarding the decedent's updated status since she replied to Dr. Azof with "Rodriguez. D/c with miralax 1 capsule bid."

In a sworn affidavit, Dr. Ferstenberg denied that he received any calls from BHC on October 27, 2018, around the time of Dr. Gooding's conversation on Whatsapp regarding discharging the decedent with Miralax.

Considering the foregoing, the defendants failed to shoulder their burden of proof. Factual issues remain as to whether negligent medical decisions surrounding the decedent's discharge were made. *Schumacher v. Pucciarelli*. 161 A.D.3d 1205, 87 N.Y.S.3d 217 (2d Dept. 2018) (matters of credibility preclude summary judgment); *Martinez v. Orange Regional Medical Center*, 203 A.D.3d 910, 165 N.Y.S.3d 573 (2d Dept. 2022).

With respect to plaintiff's lack of informed consent claim, this Court finds that the defendants did not engage in an "affirmative violation of physical integrity in the absence of informed consent." *S.W. v. Catskill Regional Medical Center*, 211 A.D.3d 890, 180 N.Y.S.3d 561 (2d Dept. 2022).

Accordingly, it is

**ORDERED** that defendants' motion for summary judgment is granted only to the extent of dismissing plaintiff's cause of action for lack of informed consent, the rest of the motion is denied, and it is further

**ORDERED** that all parties shall appear for an Alternative Dispute Resolution conference on March 20, 2025, at 10:00 AM, and it is further

[* 3]

**ORDERED** that plaintiff is directed to electronically serve a copy of this Decision and Order with notice of entry on counsel for defendants and to electronically file and affidavit of service thereof with the Kings County Clerk.

This constitutes the Decision and Order of this Court.

For Clerks use only

MG___

MD___

Motion Seq. #: 3

ENTER

_____
J.S.C.

**HON. GENINE D. EDWARDS**

[* 4]